UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Athey and Chaney
Argued at Norfolk, Virginia


MICHAEL JASON HEMMIS

                                                        MEMORANDUM OPINION* BY
v.        Record No. 1152-21-1                          JUDGE VERNIDA R. CHANEY
                                                        JULY 19, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Jennifer T. Stanton, Senior Assistant Public Defender (Indigent
Defense Commission, on briefs), for appellant.

Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Chesapeake ("trial court")

convicted Michael Jason Hemmis ("Hemmis") of three felony charges of possession of a

Schedule I or II controlled substance for possession of heroin, methamphetamine, and fentanyl, in

violation of Code § 18.2-250, and misdemeanor contributing to the delinquency of a child, in

violation of Code § 18.2-371.[1]  On appeal, Hemmis contends that the trial court erred in denying

his motions to strike because the evidence is insufficient to support the convictions.  Hemmis

also argues that the trial court abused its discretion in admitting evidence that he was a sex

offender.  For the following reasons, this Court affirms the convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court also convicted Hemmis of identity theft and providing a false identity to
a law enforcement officer.  Hemmis does not challenge these convictions on appeal.

## I. BACKGROUND

On January 1, 2020, Hemmis entered the home of K.B. with K.B.'s seventeen-year-old daughter, B.B., who resided there with K.B.[2] K.B.'s security system recorded Hemmis' entry with B.B. and notified K.B., who was out of town at the time. K.B. was concerned because B.B. was on probation and was in "a high-risk-type situation," so K.B. called the police about her concerns. K.B. authorized the police to search her home.

After K.B. called the police, Officers Shallis and Fellows of the City of Chesapeake Police Department were dispatched to K.B.'s residence to serve a detention order on B.B., who was recently released from juvenile detention. B.B.'s father was housesitting for K.B. while she was away, and he was present when the police arrived to serve the detention order. B.B.'s father allowed the police into the home and directed them to B.B.'s bedroom. The officers knocked on the locked bedroom door and announced their presence. Five to ten minutes later, B.B. unlocked the door, wearing a white shirt and no pants. The officers allowed B.B. to put her pants on before placing her in handcuffs and taking her into custody.

The officers noticed suspected narcotics in plain view on a table in B.B.'s bedroom. After Officer Fellows observed a tiny ziplock bag with a crystal, "salty looking" substance, he asked Officer Shallis to investigate the suspected narcotics due to his greater experience. Officer Shallis recognized that the substances in two clear plastic baggies were consistent with heroin and methamphetamine. Subsequent laboratory analysis showed that the baggies contained heroin, methamphetamine, and fentanyl.

Officer Shallis performed a protective sweep of the bedroom and found Hemmis hiding under a pile of clothing and blankets in the closet. Hemmis was wearing nothing but underwear.

---

[2] We have abbreviated the names of the minor child and her mother to provide them a degree of privacy.

When Officer Shallis requested his identifying information, Hemmis gave a false name, false dates of birth, and false social security numbers.

The officers observed that B.B.'s bedroom window was open, and the front yard was just outside the window. The officers searched the front yard and found two syringes, consistent with heroin use, about ten feet away in front of B.B.'s open bedroom window. According to B.B.'s mother, B.B. had substance abuse problems in the past, but she had been sober for "quite some time" when she was recently released from juvenile detention.

Officer Valli transported Hemmis to the jail, where he verified Hemmis' true identity. Hemmis told Officer Valli that he was at B.B.'s home because her father had called and asked him to pick up B.B. and bring her back to the house. When Officer Valli asked Hemmis about the narcotics on B.B.'s bedroom table, Hemmis replied that he was a daily heroin user. Then Officer Valli asked Hemmis about the methamphetamine on the table, and Hemmis replied that B.B's father supplies it to them. Hemmis denied ever using methamphetamine and claimed that B.B.'s father provides the methamphetamine and is the one "who smokes it all the time."

Officer Valli testified that Hemmis admitted to being a sex offender. Hemmis objected to the relevance of his sex offender status, but the trial court overruled the objection.

After the Commonwealth's case-in-chief, Hemmis moved to strike the evidence as insufficient to prove any of the charged offenses. The trial court overruled the motion. Hemmis did not present evidence and renewed his motion to strike. The trial court denied the renewed motion and convicted Hemmis of three offenses of possession of a Schedule I or II controlled substance for possession of heroin, methamphetamine, and fentanyl, contributing to the delinquency of a child, identity theft, and providing false identification to law enforcement. This appeal followed.

II. Analysis

A. Proof of Possession of Fentanyl, Heroin, and Methamphetamine

1. *Standard of Review*

"When presented with a sufficiency challenge in criminal cases, [this Court] review[s] the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (citing *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

2. *Proof of Hemmis' Dominion and Control over the Drugs*

To support Hemmis' convictions for felony drug possession under Code § 18.2-250, the evidence must prove beyond a reasonable doubt that he possessed the drugs, either actually or

- 4 -

constructively, with an awareness of their presence and their character as controlled substances. *See Tucker v. Commonwealth*, 18 Va. App. 141, 143 (1994). Because the drugs were not found on Hemmis' person, the evidence must prove that he constructively possessed the drugs. "Constructive possession may be established when there are 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Walton v. Commonwealth*, 255 Va. 422, 426 (1998) (alteration in original) (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)).

Hemmis contends that the trial court erred in denying his motions to strike because the evidence is insufficient to prove that the drugs were subject to his dominion and control. We disagree. Hemmis admitted that he was staying in the bedroom where the drugs were found. Although occupancy and proximity, standing alone, are insufficient to prove possession of drugs, they are factors to be considered among the totality of the circumstances. *See Ervin v. Commonwealth*, 57 Va. App. 495, 506 (2011) (*en banc*). In addition to admitting shared occupancy of the bedroom where the drugs were found, Hemmis' statements to Officer Valli can reasonably be understood as Hemmis claiming the drugs as his own or as jointly his and B.B.'s. When Officer Valli asked Hemmis about the narcotics on the bedroom table, Hemmis replied that he was a daily heroin user. A rational fact-finder could infer from Hemmis' response that he regarded the heroin on the bedroom table as his to use. When Officer Valli asked Hemmis about the methamphetamine on the table, Hemmis replied that B.B's father supplies it to them. A rational fact-finder could infer that Hemmis and B.B. received the methamphetamine from B.B.'s father and that it remained subject to their joint dominion and control. *See Hamilton v. Commonwealth*, 16 Va. App. 751, 753 (1993) ("[P]ossession [of a controlled substance] need not always be exclusive. The defendant may share it with one or more persons." (alterations in original) (quoting *Gillis v. Commonwealth*, 215

Va. 298, 302 (1974))).  Even if Hemmis truthfully claimed that he never uses methamphetamine, the methamphetamine could be subject to his dominion and control, which does not require an intent to use.

### 3. *Proof of Hemmis' Knowledge of the Presence and Character of the Drugs*

"In a prosecution for possession of a controlled substance, the Commonwealth must produce evidence sufficient to support a conclusion beyond a reasonable doubt that the defendant's possession of the drug was knowing and intentional."  *Ervin*, 57 Va. App. at 504 (quoting *Young v. Commonwealth*, 275 Va. 587, 591 (2008)).  Accordingly, actual or constructive possession alone is not sufficient to sustain a conviction.  *Id.*  "The Commonwealth must also establish that the defendant intentionally and consciously possessed it *with knowledge of its nature and character*."  *Id.*  The knowledge of its nature and character "is an essential element of the crime."  *Id.*  "A defendant's knowledge of the presence and character of a drug may be shown by evidence of the acts, statements, or conduct of the accused, as well as 'by other facts or circumstances' tending to demonstrate the accused's guilty knowledge of the drug."  *Christian v. Commonwealth*, 59 Va. App. 603, 613 (2012) (quoting *Ervin*, 57 Va. App. at 506-07).

The evidence supports the trial court's finding that Hemmis had knowledge of the presence and character of the drugs.  The drugs were in plain view on the table in the bedroom where Hemmis was admittedly staying.  From Hemmis' admission that he was a daily heroin user, a rational fact-finder could infer that he knew what heroin looked like and recognized the heroin on the table as heroin.  *See Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004) (holding that admitted prior cocaine use supports an inference that a defendant knew cocaine when he saw it).  Moreover, Hemmis' statement that he was a daily heroin user was made in response to Officer Valli's inquiry about the drugs on the bedroom table.  From this context, a rational fact-finder could infer that Hemmis' statement identified the heroin on the table as heroin.  Similarly, Hemmis responded to

Officer Valli's inquiry about the methamphetamine with an admission that he was one of the persons to whom B.B.'s father supplied the methamphetamine. This admission was an acknowledgment that Hemmis knew the methamphetamine was there and knew that it was methamphetamine. Hemmis' disclaimer that he never used methamphetamine did not undermine his statements admitting to knowledge of its presence and character.

Although Hemmis did not specifically acknowledge the presence of the fentanyl that was with the heroin and methamphetamine, such specific acknowledgment is unnecessary. "[A] defendant need know only that he is possessing a controlled substance to be guilty of violating Code § 18.2-250.[3] A claim by a defendant that he . . . was unaware or mistaken as to the precise identity of that substance is not a defense under Code § 18.2-250." *Sierra v. Commonwealth*, 59 Va. App. 770, 783 (2012). To be guilty of possession of a controlled substance, a defendant need not "know the exact nature of the substance in his possession, only that it was a controlled substance of some kind." *Id.* at 781 (quoting *United States v. Martin*, 274 F.3d 1208, 1210 (8th Cir. 2001)). "When the illegal nature of the substance is apparent . . . that circumstance supports a finding of the defendant's guilty knowledge of the contraband he possesses." *Christian*, 59 Va. App. at 611.

Considering the totality of the evidence in the light most favorable to the Commonwealth, the evidence supports the trial court's finding that Hemmis constructively possessed the heroin, fentanyl, and methamphetamine and knew of their nature and character as controlled substances. Thus, the trial court did not err in denying the motions to strike.

---

[3] This appeal does not decide whether a defendant can be convicted of separate crimes of drug possession for each controlled substance that he possesses where the evidence is insufficient to prove the defendant's knowledge of the presence of multiple controlled substances and knowledge of the number of controlled substances in his possession. This issue was not raised in the trial court nor in appellant's assignments of error.

## B. Proof of Contributing to the Delinquency of a Child

The evidence is sufficient to support the trial court's finding that Hemmis contributed to the delinquency of B.B., a minor child. Hemmis contends that the record is devoid of evidence that would support a finding that Hemmis provided drugs to B.B., encouraged her to use or possess drugs, or did anything that proximately resulted in a continuation of B.B.'s delinquent activity. We disagree with Hemmis' characterization of the evidence and hold that the evidence supports a finding that Hemmis contributed to B.B.'s delinquent act of unlawfully possessing a controlled substance.

Code § 18.2-371 provides, in pertinent part, that "[a]ny person 18 years of age or older, . . . who (i) willfully contributes to, encourages, or causes any act, omission or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected . . . is guilty of a Class 1 misdemeanor." A delinquent child is "a child who has committed a delinquent act." Code § 16.1-228. A delinquent act is defined as "an act designated a crime under the law of the Commonwealth, or an ordinance of any city, county, town, or service district, or under federal law." *Id.* To encourage means "[t]o instigate; to incite to action; to embolden; to help." *Encourage*, *Black's Law Dictionary* (11th ed. 2019).

The evidence supports a finding that Hemmis and B.B. jointly possessed methamphetamine. The methamphetamine was in plain view on the table in B.B.'s bedroom where Hemmis was also staying. According to Hemmis' own statement to Officer Valli, B.B.'s father supplied the methamphetamine to them, although Hemmis did not use it himself. Considering the totality of the evidence, a rational fact-finder could infer that Hemmis and B.B. jointly possessed the methamphetamine that was intended for B.B.'s use. Therefore, the evidence is sufficient to prove that Hemmis contributed to B.B.'s delinquent act of possession of methamphetamine.

C. Admission of Evidence of Hemmis' Sex Offender Status

1. *Standard of Review*

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Jones v. Commonwealth*, 38 Va. App. 231, 236 (2002) (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988)). "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish probability or improbability of a *fact in issue* is relevant.'" *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016) (emphasis added) (quoting *Va. Elec. & Power Co. v. Dungee*, 258 Va. 235, 260 (1999)). However, "[r]elevant evidence may be excluded if . . . the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice . . . ." Va. R. Evid. 2:403(a). "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Lee v. Spoden*, 290 Va. 235, 251 (2015).

2. *Harmless Error*

Assuming without deciding that Hemmis preserved his objection and that the trial court erred in admitting evidence of Hemmis' sex offender status, this Court concludes that any error was harmless. "[N]on-constitutional error is harmless 'when it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Lebron v. Commonwealth*, 58 Va. App. 540, 551 (2011) (alteration in original) (*quoting Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005 (1991) (*en banc*) (quoting Code § 8.01-678)). Here, it plainly appears from the record and the evidence that Hemmis received a fair trial on the merits and substantial justice has been reached. Considering the totality of the evidence—excluding evidence of Hemmis' sex offender status—the evidence is clearly sufficient to

prove the elements of the offenses beyond a reasonable doubt. Additionally, it is presumed in a bench trial that the verdict was not based on inadmissible prejudicial evidence because "[a] judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." *Id.* (quoting *Cole v. Commonwealth*, 16 Va. App. 113, 116 (1993)). Therefore, this Court concludes that any error on the trial court's part was harmless.

### III. CONCLUSION

The trial court did not err in denying Hemmis' motions to strike because the evidence is sufficient to prove the charged offenses. Assuming without deciding that it was error to admit Hemmis' sex offender status into evidence, it was harmless error. Accordingly, the trial court's judgment is affirmed.

*Affirmed.*